UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STARR INDEMNITY & LIABILITY
COMPANY,

        Plaintiff,

   -v-

MIDWEST MORTGAGE ASSOCIATES
CORPORATION,

        Defendant.

25-cv-4874 (JSR)

MEMORANDUM & ORDER

JED S. RAKOFF, U.S.D.J.:

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 32, 37. This action turns on competing interpretations of a Letter of Credit ("LOC") issued in 2017 by defendant Midwest Mortgage Associates Corporation ("Midwest"), with plaintiff Starr Indemnity & Liability Company ("Starr") as the beneficiary. The Court heard oral argument on December 8, 2025.

Upon full consideration of the parties' submissions and arguments, the Court issued a "bottom line" Order on December 15, 2025, granting Midwest Mortgage's motion for summary judgment and denying Starr Indemnity's cross-motion. See ECF No. 55. This Memorandum explains the reasoning underlying that earlier decision and directs the entry of final judgment.

I.   Background

The material facts are not in dispute. In 2017, GKD Management LP and A&G Commercial Trucking entered into a payment agreement

1

with Starr for insurance and risk-management services. Under that agreement, GKD was required to provide collateral to secure its obligations to Starr. As part of that collateral, GKD obtained a LOC from Midwest Mortgage, naming Starr as the beneficiary.

The agreement between GKD and Starr explained that a LOC would be accepted as collateral only if it came from a bank approved by the National Association of Insurance Commissioners ("NAIC") and in a form acceptable to Starr. In correspondence between Starr and GKD, Starr indicated that it could not accept the LOC because Midwest was not a NAIC-approved bank. Starr further noted that, unless Midwest replaced the LOC with one from an approved bank, the only way to cure the defect would be for GKD to have a NAIC-approved bank affirm the LOC via an amendatory supplement. That never occurred.

Despite having rejected the LOC in 2017, Starr, approximately eight years later, attempted to draw on it. Specifically, in April in 2025, Midwest received a sight draft from Starr attempting to draw on the LOC. Midwest rejected the draw, stating only that the LOC had expired on October 16, 2022. No other reason for denial was provided.

This action followed, initially filed in the District of Colorado, and subsequently transferred to this Court. As noted, the parties thereafter filed cross-motions for summary judgment.

II.  Discussion

2

While this case presents several interesting issues, the Court need only address the threshold question of whether the LOC is "evergreen," such that it renewed automatically without expiration; because if it is not evergreen, the LOC expired before Starr attempted to draw upon it and that is dispositive of Starr's claims.

The LOC's text states:

> This Letter of Credit is deemed to be automatically extended without amendment for one (1) year from the expiration date hereof or any future expiration date, unless sixty (60) days prior to such expiration date, we notify you by regular mail and registered mail at the above address, . . . that this Letter of Credit will not be renewed for any such additional period.

ECF No. 38, Ex. D.

Based on the language of "any future expiration date," Starr construes this provision as evergreen, renewing the LOC automatically each year unless Midwest gives Starr notice of non-renewal at least sixty days before the renewal date. Midwest, by contrast, construes the provision as only renewing automatically for a single year from the expiration date specified in the agreement unless the parties subsequently agree to a different expiration date. Under this interpretation, the LOC expired in 2019.

Alternatively, Midwest argues (in support of the position it took in its initial rejection letter) that, at most, the LOC must have expired in 2022, five years after issuance, because of the

3

limit on "perpetual" letters of credit set by the New York version of the Uniform Commercial Code. See N.Y. U.C.C. § 5-106(d). Starr responds by arguing that the UCC provision does not apply to a LOC that is "evergreen" as opposed to "perpetual." Specifically, Starr notes that the relevant UCC section provides that "[a] letter of credit that states that it is perpetual expires five years after its stated date of issuance, or if none is stated, after the date on which it is issued." N.Y. U.C.C. § 5-106(d). Since the LOC here does not contain a statement that it is "perpetual," Starr concludes that the UCC limit does not govern.

But this dispute over whether or not the UCC applies misses the point. While there may be a difference between an "evergreen" LOC that automatically renews for a stated term unless the issuer notifies otherwise and a "perpetual" LOC that has no stated termination date, the LOC here is neither. The operative language provides only that the LOC is automatically extended "for one (1) year from the expiration date hereof or any future expiration date." The phrase "any future expiration date," while perhaps less than artful, is hardly sufficient to render the LOC evergreen. Its most natural meaning is to hold open the possibility that the parties might subsequently agree to establish a new expiration date during its term. Absent such an amendment, there is no "future expiration date" from which an additional automatic extension could run. Read in context, the provision allows for a single

4

automatic renewal and contemplates the possibility of later amendments; it does not provide for indefinite renewal. Consequently, once the one-year extension elapsed without amendment, the LOC expired on October 15, 2019.

In opposition, Starr relies primarily on two out-of-circuit decisions, Golden West Refining Co. v. SunTrust Bank, 538 F.3d 1233 (9th Cir. 2008), and Michigan Commerce Bank v. TDY Industries, Inc., 2011 WL 6009882 (W.D. Mich. Dec. 1, 2011). But a careful reading suggests that these decisions actually support Midwest's position. In Golden West, the letter of credit stated that it "shall expire one year from the date hereof provided however, that it shall be deemed automatically renewed without amendment for additional one year periods." 538 F.3d at 1238 (emphasis added). Likewise, in Michigan Commerce Bank, the LOC provided that it "shall automatically renew on a month to month basis." 2011 WL 6009882, at *2 (emphasis added). That language unmistakably contemplates repeated renewals.

No comparable language appears here. The LOC at issue provides for a single automatic extension. It does not state that it "shall automatically renew" or any express equivalent. It simply suggests that the parties might agree in the future to a new expiration date, from which there would still be a single one-year term of expiration. Far from supporting Starr's position, the cases it cites illustrate precisely the kind of language that would be

required to make an LOC evergreen and that is missing from this one.

Because the Court therefore concludes that the LOC expired in 2019, Starr's attempted draw was made on an expired instrument, and Midwest's refusal to honor the draw was therefore proper.

III. Conclusion

For the foregoing reasons, the Court re-confirms its earlier Order, grants Midwest's motion for summary judgment, and denies Starr's cross-motion. The Clerk's Office is respectfully requested to enter final judgment dismissing the complaint and then to close this case.

New York, NY
January __21__, 2026

_____
JED S. RAKOFF, U.S.D.J.